**ORANGE RICE MILLING COMPANY, INC.**

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY.**

Civ. A. No. 750863.

United States District Court,
W. D. Louisiana,
Lake Charles Division.

Jan. 6, 1978.

Karl E. Boellert, Camp, Carmouche, Palmer, Carwile & Barsh, Lake Charles, La., for plaintiff.

Thomas L. Raggio, Raggio, Farrar, Cappel & Chozen, William L. McLeod, Jr., Kimball, McLeod & Dow, Lake Charles, La., for defendant.

## OPINION

VERON, District Judge.

Orange Rice Milling Company (hereinafter referred to as "Orange"), alleging ownership of a warehouse in Vinton, Louisiana, brings this action to recover damages to that structure caused by the derailment of a train owned and operated by Southern Pacific Transportation Company (hereinafter referred to as "Southern Pacific") on May 14, 1975. In conjunction with its answer to Orange's complaint, Southern Pacific asserted a third party claim against Sabine Canal Company (hereinafter referred to as "Sabine") and Canal Properties, Inc. (hereinafter referred to as "Canal") seeking indemnification for any judgment against it in favor of Orange. Subsequently, Orange filed a cross-claim, seeking, in the event its original claim against Southern Pacific is denied, indemnification from Sabine and Canal for costs incurred in the removal of the wrecked warehouse. The matter was heard before the court in a non-jury trial on November 7, 1977.

On May 14, 1975, a train owned and operated by Southern Pacific derailed causing damage to a warehouse in Vinton, Louisiana. The warehouse is located on the Railroad's right of way in Vinton which was leased to Sabine in 1929 by Southern Pacific's predecessor in title, Louisiana Western Railroad Company. The evidence indicates that at sometime subsequent to the execution of the lease, Sabine built two warehouses on the leased premises. Canal became a party to this litigation as a result of the assignment of an undivided one-half interest of Sabine's lease rights to it by Sabine on February 27, 1975. Mr. Edward Stine, president of Orange testified that Orange's predecessor in title, Stine and Kinney, had acquired ownership of one of the warehouses (the warehouse which is the subject of this litigation and which will hereinafter be referred to as the "warehouse") somewhere around 1954 or 1955. Likewise, in interrogatories propounded by Orange, Sabine and Canal attest to Orange's ownership of the warehouse.

There being no dispute as to Southern Pacific's fault relative to the derailment and ensuing damage to the warehouse, we must first determine if Orange is the owner of the warehouse and thereby entitled to recover pursuant to La.C.C. 2315.

While it is true there is no evidence of a written deed translative of ownership between Sabine and Orange, we, nonetheless, find that Orange's ownership is established on the basis of La.C.C. 2275:

Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold.

Sabine and Canal confessed under oath that they "had always understood that Orange Rice Milling Company owned the warehouse." Orange has been in undisturbed possession and control of the warehouse for over twenty years.

The Court therefore holds that Orange is the owner of the warehouse and is entitled to recover from Southern Pacific for damages incurred as the result of the derailment.

Turning to the amount of damages, three items are to be considered: the warehouse, the costs of demolition, and the contents.

■ As to the warehouse and the costs of demolition, the testimony indicates at the time of the derailment, the building was in poor condition. In fact, Mr. Preston L. Duplechain, a former employee of the State Fire Marshal's office who issued the demolition order, testified that the order would have been issued even if the derailment had not occurred. Additionally, the evidence shows that there was a certain amount of salvage which Orange saved as a result of doing its own demolition work. Mr. Stine testified that sometime between 1963 and 1967 he bought a very similar warehouse structure for $20,000. Using that figure as a basis and considering the previously mentioned factors, the court concludes that $5,000 would be an appropriate amount of damages for both the warehouse and attendant demolition costs.

As to the question of the value of the contents lost, the evidence indicates that some contents were lost and some were salvaged. Considering all the evidence on the contents, the court feels an award of $750 will compensate the plaintiff for this loss.

■ Southern Pacific's claim against Sabine and Canal is dependent upon whether the 1929 lease was still in effect at the time of the accident and if it was, the applicability of the indemnification provision within that lease. When a fixed term lease has expired and no action has been taken pursuant to the expiration, legal reconduction takes place, and except for the duration of the lease, a reconducted lease contains the same terms and conditions as the original lease. *Governor Claiborne Apartments, Inc. v. Attaldo*, 256 La. 218, 235 So.2d 574 (1970); La.C.C. 2685, 2686, 2689.

■ Such is the case here. The original lease executed in 1929 was for a fixed term of three years. No step has ever been taken by either the lessor or lessee to terminate the lease once the three year period expired. In fact, it is abundantly clear, the parties desired the lease to continue as evidenced by Southern Pacific's continued acceptance of rental payments and Sabine and Canal's continued possession of the premises. The Court therefore concludes that the 1929 lease as originally executed was still in effect at the time of the derailment.

■ The indemnification provision of the lease provides as follows:

"Sixth: It is expressly agreed and declared to be a part of the consideration of this lease that the lessor and other carriers lawfully using any tracks on or adjoining said premises, shall be and hereby are exonerated from all liability for losses and damages occurring to any buildings or property of lessee, or of any other person on said leased premises, caused by sparks emitted from locomotives, or from any other cause whatsoever. Said lessee further agrees to release, relinquish and abandon any and all claims for damage to the buildings or contents thereof upon the leased premises, and for injury to and death of persons and livestock on said

premises resulting from accident to or derailment of locomotives and cars. Lessee agrees to reimburse lessor at the office of its treasurer as aforesaid, all sums of money paid by lessor in settlement of suits and demands for damages."

The Louisiana Supreme Court in *Polozola v. Garlock, Inc.*, 343 So.2d 1000 (1977), in discussing an indemnification contract in which an indemnitee is to be indemnified for his own negligence states "[indemnification is required only when] such an intention was expressed in unequivocal terms."

The court feels the terms of the indemnification provision of the 1929 lease unequivocally provide that Southern Pacific is to be indemnified for its own negligence relative to the leased premises. The Court in interpreting the provision can see no other reasonable interpretation of the language, or to say it another way—how could the language have more clearly stated its purpose? The court therefore holds that judgment be rendered in favor of Southern Pacific in its third party claim against Sabine in the amount that Southern Pacific has been held liable to Orange Rice.

For the foregoing reasons, judgment is rendered in favor of Orange Rice Milling Company and against the defendant, Southern Pacific Transportation Company, in the amount of $5,750 and in favor of Southern Pacific Transportation Company and against Sabine Canal Company and Canal Properties, Inc. in the amount of $5,750.

Counsel for plaintiff is required to submit a written judgment within five (5) days. Legal interest shall commence from the date of the signing of the judgment.